UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

MURAD RABADANOV,

     Petitioner,

v.

MARKWAYNE MULLIN, et al.,[1]

     Respondents.

No. 1:25-CV-286-H

**<u>ORDER</u>**

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Murad Rabadanov, a native and citizen of Russia, is one such alien. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either his release or a bond hearing based on the text of the INA and the Fifth Amendment's Due Process Clause. Dkt. No. 1.

The parties dispute the nature of Murad Rabadanov's entry into the United States, but the upshot is that he meets the INA's definition of an "applicant for admission." 8 U.S.C. § 1225(a)(1). In light of *Buenrostro-Mendez*, Rabadanov's due process claim is the only remaining non-foreclosed issue. But neither the substantive nor procedural veins of due process afford alien petitioners a bond hearing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Rabadanov are not entitled to bond, but they are permitted to remain in U.S. custody and

---

[1] Markwayne Mullin replaced Kristi Noem as Secretary of Homeland Security on March 26, 2026. Thus, he is automatically substituted as a party to this action. *See* Fed. R. Civ. P. 25(d).

fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 1) is denied.

### 1.    Background

In 2023, Rabadanov presented himself to U.S. authorities at the port of entry in San Ysidro, California. Dkt. Nos. 15-1 at 6; 16 at 1. He applied for admission. Dkt. No. 15-1 at 6. The same day, U.S. authorities permitted Rabadanov to enter the United States as an "arriving alien." Dkt. No. 15-1 at 5; *see* 8 U.S.C. § 1225(a)(1). He was also placed into removal proceedings with a Notice to Appear, which charged him with removability as an alien "not in possession of a valid . . . entry document as required by the [INA]." Dkt. No. 15-1 at 6; *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I). The following year, Rabadanov applied for asylum. Dkt. No. 15-1 at 5.

ICE detained Rabadanov while driving through Oklahoma in 2025. *Id.* He was then placed in custody without bond at the Bluebonnet Detention Facility in Anson, Texas. Dkt. No. 1 ¶ 1. Rabadanov is held without bond neither requested nor received a bond hearing. Dkt. No. 15-1 at 5.[2] Relevant here are two Board of Immigration Appeals decisions. First, in *Matter of Q. Li*, the BIA found that aliens who were detained "while arriving in the United States and thereafter placed in removal proceedings" are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). 29 I. & N. Dec. 66, 71 (BIA 2025). Second, and on the

---

[2] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025). Moreover, in a March 6 order, the Ninth Circuit stayed the Central District's purported vacatur pending a ruling on the government's emergency motion for a stay pending appeal. *Maldonado Bautista v. DHS*, No. 26-1044, Dkt. No. 5 at 2 (9th Cir. Mar. 6, 2026). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Rabadanov's petition does not present an exhaustion problem. *Id.*

heels of *Q. Li*, the BIA found that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings.  *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025).

Instead of requesting a bond hearing, Rabadanov filed a petition for a writ of habeas corpus.  The petition states two claims for relief.  First, Rabadanov alleges that his detention without bond violates the INA.  *Id.* ¶¶ 61–65.[3]  Second, Rabadanov contends that his detention without bond violates his due process rights.  *Id.* ¶¶ 53–60.

The Court ordered the respondents to show cause why Rabadanov's petition should not be granted.  Dkt. No. 7; *see* 28 U.S.C. § 2243.  The respondents answered (Dkt. No. 15) and Rabadanov replied (Dkt. No. 16).

While litigation was underway in this case, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225.  *See* 166 F.4th at 498.  The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp.  *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

---

[3] Paragraphs 64 and 65 are erroneously numbered as 100 and 101, respectively.

2.    **Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

3.    **Analysis**

As noted above, Rabadanov raises two claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, and another based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 53–65. As explained below, *Buenrostro-Mendez* forecloses Rabadanov's statutory claim. Thus, the only claim left for consideration is Rabadanov's due process claim. The Court has considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[4] Even so, the Court considers the arguments raised in Rabadanov's briefing to address whether bond-less detention of aliens present in the United States violates the Constitution. The answer is no.

---

[4] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

### A.    *Buenrostro-Mendez* forecloses Rabadanov's INA claim.

The parties dispute the nature of Rabadanov's presence in the United States.  The respondents say that he is an arriving alien because he applied for admission at a port of entry and was released pending the outcome of his asylum application.  Dkt. No. 15 at 4–6 (citing 8 C.F.R. § 1.2).  Rabadanov urges that the very fact of his parole, whether or not properly granted, means he is no longer an "arriving alien" and thus not subject to Section 1225(b)(2)(A).  Dkt. No. 16 at 3.  This argument, of course, predated *Buenrostro-Mendez*, and Rabadanov has not attempted to address the impact of that intervening case.

In short, it is a moot point whether Rabadanov is an arriving alien or more akin to the "unannounced guest" who is here "after two years of living inside [the] house."  Dkt. No. 16 at 3.  Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  Rabadanov is an "alien."  If he is arriving in the United States as the respondents allege, then he is an applicant for admission.  And if he is properly classified in the same vein as other illegal aliens, as he claims, *see id.* § 1101(a)(13)(A), then he is still an applicant for admission.  Either way, because Rabadanov is an "applicant for admission" under Section 1225(a)(1), binding Fifth Circuit precedent requires that he be detained without bond under Section 1225(b)(2)(A).  *See Buenrostro-Mendez*, 166 F.4th at 498.  Thus, his INA claim fails.[5]

---

[5] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue.  *Supra*, n.4.

**B.      The Due Process Clause does not require the government to give Rabadanov a bond hearing.**

Next is Rabadanov's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment.  Dkt. No. 1 ¶¶ 53–60.  Because *Buenrostro-Mendez* did not directly address this question, the Court turns to Rabadanov's arguments.  He does not clarify whether his claim sounds in procedural or substantive due process protections, but his petition features arguments sounding in both forms.  *See id.* ¶¶ 31–32.  But either way, he is not entitled to relief.

Start with substantive due process.  That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'"  *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).  While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures.  The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."  *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens."  *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect

– 6 –

of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Rabadanov has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Rabadanov relies on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 1 ¶ 32. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*,

emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)).  Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32.  In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted).  Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission.  "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  No part of the statute "says anything whatsoever about bond hearings." *Id.*  Accordingly, Rabadanov is not entitled to a bond hearing as a matter of procedural due process.

**4.   Conclusion**

In short, Rabadanov, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498.  And the Due

Process Clause does not require a bond hearing in these circumstances.  Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on March 31, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE